Moran v. Stewart.

## ANGIE MORAN, Appellant, v. SAMUEL B. STEWART.

### Division Two, December 10, 1912.

1. **DOWER: Damages for Deforcement: Direction to Commissioners: No Exceptions at the Time.** Unless the appellant objected and excepted to the action of the court at the term at which commissioners were appointed to admeasure plaintiff's dower in the lands and were directed to disregard the improvements made upon the land since the death of her husband, and unless appellant saved exceptions to the order of the court approving the report of the commissioners obeying those directions, any error the trial court committed in directing the commissioners to ascertain the value of the real estate as of the date of the death of appellant's husband and not to consider any permanent improvements placed thereon by defendant, is not for review on appeal. If the court erred in those directions, objections and exceptions should have been made at the time the order was made and the report was approved.

2. **NECESSITY FOR EXCEPTIONS.** The statute (Sec. 2028, R. S. 1909) does not designate the class or nature of errors which may be preserved for review by bills of exceptions; but it has long been the practice in this State to require exceptions to be preserved to all erroneous rulings and orders of trial courts which tend to produce unjust or erroneous final judgments; and the General Assembly has left to the appellate courts to determine what orders and rulings should form proper matters of exception and the effect of such errors upon the rights of litigants in a concrete case.

3. ————: **When Made.** Exceptions to erroneous and improper acts of a trial court which tend to prejudice the rights of litigants, should be saved at the very time the error is committed, in order that the court may correct its own error or mistake before it ripens into a final judgment; and unless timely made, the erroneous ruling cannot be reviewed upon appeal.

4. **DOWER: Damages for Deforcement: Direction to Commissioners: Exception to Approval of Report.** It is not necessary for the trial court to give to the commissioners appointed to admeasure a widow's dower written directions in regard to their duties, and if no directions are given and their report is erroneous under the law and facts, an exception to the order of the court approving the report is sufficient to preserve the

error for review; but an exception to the order of the court overruling objections to the report only is not sufficient; the appellant should have gone further, and excepted to the order approving the report.

5. ———: ———: ———: ———: **Motion to Set Aside.** And appellant having saved no exception to the order approving the commissioners' report, nothing was gained by filing a motion after the adjournment of the term praying the court to set aside its order approving the report, and saving an exception to the order of the court striking that motion from the files. The time to have saved the exception was when the court approved the report.

6. ———: **Quarantine: Ripening Into Adverse Possession.** The suit by the heir or remainderman is not barred by limitation by the fact that the widow has held possession under her quarantine right or homestead. She cannot by retaining possession under either right become the absolute owner by limitation.

7. ———: **Several Tracts: Right of Remainderman.** Where there are two separate tracts of land, and defendant, in a suit by the widow to have dower admeasured in one of them and for damages for deforcement, is the owner of both as remainderman, subject to her right of quarantine, dower and homestead, he may have dower assigned in both tracts, and her homestead and dower may be set off to her entirely in the one tract she is occupying.

8. ———: **Under Antenuptial Contract.** Where the widow in her pleading asserts she is holding a certain tract under quarantine, dower and homestead, she cannot be heard to claim the tract under an antenuptial contract. Besides, the antenuptial contract in this case, having been on a former appeal held invalid for lack of sufficient consideration, is no longer valid for any purpose.

9. ———: **Admeasurement: By Commissioners.** The preliminary trial in a suit to admeasure dower and for damages for deforcement is to determine the right of the widow to dower; and having determined that she is entitled to homestead and dower in one tract and to dower in another, the court cannot in that preliminary trial decree how much of the second tract her dower rights will cover; that must be ascertained by the commissioners when they come to appraise the land and set off one-third thereof in value to her.

10. ———: ———: **Damages for Deforcement.** Where defendant never at any time deprived the widow of the possession of any part of the land which was set off to her as dower and homestead, she is not entitled to damages for deforcement of dower

in the rest. A judgment for damages for deforcement of dower
is a special judgment against the interest of the heir or other
person who has wrongfully deprived the widow of dower in the
very land which she has succeeded in having set off to her in
the dower suit.

Appeal from Andrew Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*James W. Boyd* and *James M. Rea* for appellant.

(1) Sec. 367, R. S. 1909, provides that the value
of the whole dower to her belonging from the time of
her husband's death, if he died seized in land, until
the day she shall recover her dower, shall be assessed
as her damages. This court has from the earliest days
held this statute to mean what it says, so that the
defendant in the assessment of damages would not be
entitled to any abatement of the amount thereof on
account of any improvements, which he may claim he
put upon said premises. Rankin v. Oliphant, 9 Mo.
241; McClanahan v. Porter, 10 Mo. 749; Graves v.
Cochran, 68 Mo. 77; Gentry v. Gentry, 122 Mo. 218;
Smith v. Stephens, 164 Mo. 422; Riley v. Clamorgan,
15 Mo. 203; Thomas v. Hesse, 34 Mo. 13; Thomas v.
Mallinckrodt, 43 Mo. 58; Rannels v. University, 96
Mo. 226; Gore v. Riley, 161 Mo. 238; Brown v. Woody,
98 Mo. 259. (2) The judgment of the court in over-
ruling the exceptions to the report of the commission-
ers and then in hearing the evidence as to the rents
and profits received by the defendant from said 500
acres of land and then holding and deciding that the
plaintiff was not entitled to anything at all out of said
rents and profits must be based on the theory that the
widow should be charged with the rents of the home-
stead before her dower was assigned. As a matter of
fact she cannot be charged therewith. She held the

homestead up to the time the dower was assigned free,
and up to that time under the statute hereinabove
referred to she was entitled to the rents and profits
of every acre of land of which David Moran died
seized. Hence, the judgment of the court ought to be
reversed and this court ought to direct the circuit court
to enter judgment for the appellant for one-third of
the rents and profits the respondent received from said
500 acres of land without giving him any improve-
ments he may have made or even any taxes which he
may have paid thereon. (3) Had the appellant waited
for ten years after the death of her husband to insti-
tute a proceeding for the recovery of dower in real
estate her claim to dower would have been barred.
R. S. 1909, Sec. 391. ''All actions for the recovery of
dower in real estate, which shall not be commenced
within ten years from the death of the husband,
through or under whom such dower is claimed, or de-
manded, shall be forever barred.'' Robinson v. Ware,
94 Mo. 678; Harrison v. McReynolds, 183 Mo. 533.
Now, if the appellant could not have maintained an
action for dower after the lapse of ten years, can
the respondent after a lapse of eleven years inject
into appellant's suit for dower his claim that she
ought not to have dower in the lands in which he has
during all that time enjoyed possession, and ask that
she be fubbed off with the home place and without any
damages in the way of rents and profits?

*Booher & Williams* and *Vinton Pike* for respond-
ent.

(1) If the widow's possession and occupancy was
an acceptance of the marriage contract provision, she
is estopped to claim dower. If her possession and
occupancy was under her quarantine right, then she
held for and under the heir, and her possession could

not be adverse, as this court has so often held. Brown v. Moore, 74 Mo. 633; Null v. Howell, 111 Mo. 273; Fischer v. Siekmann, 125 Mo. 177; Melton v. Fitch, 125 Mo. 290; Carey v. West, 139 Mo. 146; Westburger v. Gallencamp, 154 Mo. 28. (2) It was provided by the Statute of Merton that she should recover her dower with damages from the death of her husband. "But the statute gave such damages against the tenant only on his being convicted of deforcement and as he who was always ready to assign dower could not be convicted of deforcement, he was allowed to plead *tout temps prist;* and the widow, in order to convict him of deforcement was obliged to reply that she had made demand of dower, and it had not been assigned to her." Woodruff v. Brown, 17 N. J. L. 259; Driskill v. Hanks, 187 B. Mon. 855; McLaughlin v. McLaughlin, 20 N. J. Eq. 190; Grayson v. Moncure, 1 Leigh (Va.), 452. (3) When the report of the commissioners gave her the identical land for homestead and dower which she had enjoyed "under her homestead and dower right" since the death of her husband, the controversy was at an end. There was nothing left to do. Plaintiff had not been deforced of her dower; she had not been compelled to sue; dower had not been unfairly assigned, and she had actually secured her dower forthwith.

BROWN, P. J.—Action by widow for dower and damages for deforcement thereof. From a judgment assigning dower and rejecting her claim for damages, she appeals.

On February 5, 1891, David Moran, seventy years old, with two adopted children, but no lineal heirs, was united in marriage with the plaintiff then a lady of thirty summers. They resided in Andrew county, where the husband was possessed of two farms, one of 500 acres, and the other a smaller tract of 106 acres.

On the smaller farm, these victims of the designing Cupid made their home until thirteen months later, when the Grim Reaper, unmindful of the achievements of the aforesaid Cupid, and with a shameless disregard for connubial felicity, entered the Moran home and wantonly struck down the doting husband.

When the funeral was over, it was discovered that Moran had devised all his lands to his adopted children except a life estate in the 106-acre tract.

By an antenuptial contract, Moran, in consideration of marriage, settled upon plaintiff the 106-acre tract, "during her life or widowhood;" and in consideration of rights acquired by that settlement, she agreed to waive all claim to dower and homestead in the real estate of her husband. [See 173 Mo. 211, for copy of contract.]

However, the plaintiff was not at all satisfied with such rights in the 106-acre tract as were given to her by the marriage contract; and during the last twenty years has assiduously sought to enlarge her estate in the realty of her deceased husband. This is her fifth appearance in this court in her efforts to acquire more property than she agreed to accept in full satisfaction of her marriage with Moran. [See 122 Mo. 295; 132 Mo. 73; 151 Mo. 555; 173 Mo. 207.]

On the 27th day of November, 1899, she instituted this action against the adopted son of her husband for dower in the 500-acre tract occupied by him; and also claimed damages for the deforcement of her dower in that tract.

Defendant pleaded the marriage contract as a bar to plaintiff's dower; but this court held that said contract was not based on a sufficient consideration, and did not bar the plaintiff's right to dower. The first appeal in this particular cause resulted in a reversal and remanding of the cause for new trial. [Moran v. Stewart, 173 Mo. 207.]

On May 25, 1903 (after the cause was remanded by this court), defendant amended his answer so as to admit the plaintiff's right to dower in the 500-acre tract occupied by him; but asserted that he had made several thousand dollars worth of permanent improvements on the property since the death of Moran, and prayed that the value of these improvements be deducted from any dower that might be assigned to her. Defendant in his amended answer also averred that plaintiff was entitled to dower and homestead in the 106-acre tract occupied by her. That the said 106-acre tract was equal in value to one-third of all the real estate of her deceased husband, and prayed that dower be assigned to her in all the real estate of deceased, including the 106-acre tract.

In plaintiff's reply, she alleges that since the death of her husband, she has held the 106-acre tract "by virtue of her right of homestead and quarantine."

On November 12, 1903, both parties, after waiving a jury and admitting "the facts set up in the pleadings," submitted the case to the court. The court found the issues in favor of plaintiff, and that she was entitled to dower in the 500-acre tract, with damages for the detention thereof; also that she was entitled to both dower and homestead in the 106-acre tract.

The court then appointed appraisers to view the property and set off to plaintiff, first, a sufficient amount of the 106-acre tract to equal $1500 in value as her homestead, and also a sufficient amount of the remaining lands occupied by the plaintiff and defendant to equal one-third of all the real estate of the deceased, said one-third to include the amount set off as homestead.

At the same time the court also made an order directing the commissioners that in ascertaining the value of the different tracts of land owned by the deceased, they *should not consider any permanent im-*

*provements placed upon the lands since the death of Moran.*

On February 23, 1904, the commissioners filed their report reciting that they had set off plaintiff's homestead in the 106-acre tract and also the remainder of said 106-acre tract in full of her dower in all of her late husband's lands.

When this report was filed, the plaintiff filed objections thereto, alleging among other things that the commissioners had placed a value on both tracts of land as of the date of the death of David Moran; that said lands had greatly increased in value since his death, and that the commissioners should have awarded the plaintiff one-third in value of all of said lands at the date of the assignment of her dower and homestead.

By what we suppose is the bill of exceptions in this cause, it appears that the plaintiff's objections to the report of the commissioners were overruled by the court while the plaintiff's attorney was temporarily absent from the court room. When he returned on the same day and was informed of the action of the court, he announced his desire to introduce in support of said motion numerous files in other suits in which the plaintiff was or had been a party; and also the will of the late David Moran. Upon objection of the defendant, the court refused to allow these documents to be introduced, on the ground that the offer came too late; whereupon plaintiff saved her exceptions.

It does not appear that the plaintiff at any time excepted to the order of the court appointing and directing the commissioners how they should set off the plaintiff's dower and homestead; nor does it appear anywhere that she excepted to the action of the court in confirming and approving the report of the commissioners.

After the commissioners' report was approved, the plaintiff filed a motion for a new trial, which being overruled, she appealed to this court. Later, this appeal was dismissed by the plaintiff as having been prematurely taken.

Thereafter, at the May term, 1908 (four years after the approval of the commissioners' report), plaintiff moved the court to set aside its order approving the report of said commissioners appointed to set off dower and homestead; which motion was by the court stricken from the files on the 10th day of November, 1908; and plaintiff excepted.

Thereafter, at the November term, 1908, at the request of the plaintiff, the cause was redocketed, and the issue of the plaintiff's right to damages for the detention of her dower in the 500-acre tract was tried before the court sitting as a jury, and a judgment rendered in favor of the defendant, holding that plaintiff was not entitled to any damages; whereupon the plaintiff prosecuted this appeal.

For reversal of the judgment, plaintiff contends: (1) that the court erred in directing the commissioners to fix the value of the real estate as of the time of the death of David Moran and not allowing them to consider the enhanced value of the property brought about by the improvements made by defendant; (2) that plaintiff was the absolute owner of the 106-acre tract, and the court erred in assigning her dower in that tract; (3) that the defendant was barred at the time of filing his amended answer from having dower or homestead set off to plaintiff in the 106-acre tract; and (4) that the court erred in not awarding her damages for the detention of her dower by defendant.

Other alleged errors of the trial court are complained of; but they are either embraced in the foregoing assignments or found not worthy of attention.

OPINION.

I. The main insistence of the plaintiff is that the court erred in directing the commissioners to ascertain the value of the real estate as of the date of the death of Moran and instructed them not to consider any permanent improvements placed thereon by defendant.

Upon the record, this issue is not properly presented to us for review; first, because plaintiff did not object or except to the action of the court at the November term, 1903, when the commissioners were appointed and directed to disregard the permanent improvements made on the land since the death of Moran; and, second, because no exceptions were saved to the order of the court approving the report of the commissioners.

The action of the trial court in finding plaintiff was entitled to dower in both the 106 and the 500-acre tracts, its order appointing commissioners to set off homestead and dower therein, and directing them how to fix the value of said property, was not a final judgment nor any part thereof. It was only a preliminary order of the court leading up to a final judgment. [Rannels v. Washington University, 96 Mo. 226, l. c. 231.]

If the court erred in its directions to the commissioners, its attention should have been called to the error by a proper exception at the time such error was committed, so that the same could have been corrected then and there.

Sec. 2028, R. S. 1909, which provides that exceptions may be saved to the "opinion" of the trial court during the progress of trials, does not designate the class or nature of errors which may be preserved for review by bills of exceptions; but it has long been the practice in this State to require exceptions to be preserved to all erroneous rulings and orders of trial

courts which tend to produce unjust or erroneous final judgments. It was impossible for the General Assembly to foresee and designate the sundry classes of erroneous rulings, orders or misconduct of the trial courts which might injuriously affect the rights of the litigants in the final determination of civil cases. It was therefore left to the appellate courts to determine what orders and rulings should form proper matters of exception and the effect of such errors upon the rights of litigants in each concrete case.

It has been held that the following orders made by trial courts if erroneous and injurious to a litigant, must be excepted to by him when made: orders awarding changes of venue—Gibney v. St. Louis Transit Co., 204 Mo. 704, l. c. 717; orders consolidating suits—Turley v. Barnes, 67 Mo. App. 237, l. c. 240; orders striking out parts of pleadings—Linn County v. Bank, 175 Mo. 539.

If the trial court erred in directing the commissioners to disregard permanent improvements made on the land of Moran and to assign the homestead and dower of plaintiff out of the 106-acre tract, so far as it would go, that error must have been as apparent to plaintiff's attorney at the time the interlocutory judgment was entered and the order made as when the commissioners filed their report at the succeeding term of court; and no reason being apparent why he failed to except to that interlocutory order when it was made, the objections to the report of the commissioners, made in exact conformity with the order under which they were appointed, comes too late, and cannot be considered on appeal. [Richardson v. Association, 156 Mo. l. c. 413; Windes v. Earp et al., 150 Mo. 600.]

In the trial of civil cases, the same duty rests upon plaintiff's as defendant's attorneys to aid the court in every possible way to try the case according to law; and among other duties so imposed is to except to every erroneous or improper act of the trial

court which tends to prejudice the rights of their clients. Said exceptions must be saved at the very time such error is committed, to the end that the trial court may correct its error or mistake before it ripens into an erroneous or unjust final judgment.

It was not necessary for the circuit court to have given the commissioners any written directions in regard to their duties. [Chicago, etc., Railroad Company v. Randolph Townsite Company, 103 Mo. 451, l. c. 468.]

If no directions had been given to the commissioners and their report had been erroneous under the law and facts, an exception to the order of the court approving this report would have been sufficient to have brought such error here for review; but the abstract does not show that any such exception was saved. An exception was only saved to the order of the court overruling objections to the report.

The statutes do not require written exceptions to the report of commissioners appointed to assign dower or homestead. [Secs. 374 and 6713, R. S. 1909.]

The trial court may determine the correctness or legality of such report in whatever manner is satisfactory to it. If written exceptions be filed and overruled, that does not injure either party, because the court can overrule the written objections and still reject the report of the commissioners on grounds not mentioned in such objections.

When the report was approved, it became binding; and then the plaintiff should have excepted to the order approving it. This she failed to do. [Richardson v. Association, 156 Mo. 407. l. c. 411.]

The report of the commissioners appointed to assign plaintiff's dower was approved by the circuit court on March 24, 1904, and more than four years thereafter, to-wit, on November 20, 1908, the plaintiff apparently having discovered that she had saved no exceptions to the approval of said report filed a mo-

tion praying the court to set aside its order approving the report, and saved her exceptions to an order of the court striking said motion from the files.

The filing of this last named motion and the saving of exceptions to the court's action in striking it from the files, did not help the plaintiff. When the trial court commits an error to which an exception may be properly saved, such exception must be saved promptly. [Harrison v. Bartlett, 51 Mo. 170; City of St. Joseph v. Ensworth, 65 Mo. 628; Bond v. Finley, 74 Mo. App. 22; Richardson v. Association, 156 Mo. 407, l. c. 411.]

II. Plaintiff further insists that the court committed error in finding that dower should be assigned to plaintiff in the 106 acre tract, because plaintiff was the absolute owner of such tract at the time defendant's amended answer was filed, and that defendant's right to have dower assigned in that tract was barred by the Statute of Limitations.

The proposition that one occupying the home and plantation of deceased under a widow's quarantine can by that act acquire an absolute title against the heir or remainderman, is novel, and wholly untenable. Under no construction of plaintiff's pleading could she have been entitled to anything more than a life estate in the 106 acre tract; and the settled rule of law is that possession of one holding a life estate can never become hostile to the remainderman. [Hall v. French, 165 Mo. 430.]

Our attention has not been called to any law which would bar the right of an heir to apply to the circuit court to assign dower to a widow who, as in this case, is occupying lands under the right of quarantine. Through filial consideration and affection, heirs often allow the widowed mother to occupy the whole of their father's real estate and enjoy the income thereof for an indefinite period. To hold that heirs should be penalized by forfeiting their interest in the property

for such generosity toward a parent, would violate the plainest laws of humanity.

A delay on the part of the heir or remainderman in bringing suit for the assignment of the widow's dower while she is in possession, does not bar the action, because the possession by the widow is not hostile to the heir or remainderman. [Fischer v. Siekmann, 125 Mo. 165; Carey v. West, 139 Mo. 146.]

In the instant case, at the time of filing his amended answer the defendant was the owner of the remainder in both the 106 and the 500-acre tracts, subject to the widow's quarantine, dower and homestead rights; and it was altogether proper on his answer for the court to order plaintiff's dower in both tracts assigned at the same time. It is always the policy of the law to prevent a multiplicity of suits. The plaintiff seems grieved because she received no part of the 500 acres as dower. Her homestead expressly asserted in her reply had to be set off in the 160-acre tract; and no doubt the court and commissioners thought it would be more to her interest to have her dower assigned out of the remainder of that tract than to give her part of her dower in another tract and allow the defendant to recover possession of a part of the 106 acres.

In the last brief filed by appellant, she asserts that she is holding the 106 acre tract under the marriage contract, notwithstanding her reply in this cause shows she is holding it under dower and quarantine. She can have no interest whatever under the marriage contract. She had to repudiate that contract in order to have dower and homestead; and this court having held that the marriage contract was based upon an insufficient consideration, it is not valid for any purpose.

III. The further contention of plaintiff that, having found that she was entitled to dower in the 500-

acre tract, the court erred in approving the report of the commissioners by which she was not given any part of that tract, is unsound. The preliminary trial to determine plaintiff's rights was upon the pleadings which, as we have seen, were admitted to be true; and from that trial, the court could make no final decision as to how much of the land plaintiff's homestead and dower rights would cover. That had to be ascertained and was ascertained by the commissioners when they appraised the land and set off one-third thereof in value to the plaintiff.

IV. Another contention of plaintiff is that she was not allowed to recover damages for deforcement or detention of her dower. The evidence clearly shows that defendant never at any time deprived her of the possession of any part of the land which was set off to her as dower and homestead; consequently there was no evidence upon which a judgment for damages could be based. When all the provisions of the dower law are read together, it becomes apparent that a judgment for damages for deforcement of dower is not a general judgment, but must be a special judgment against the interest of the heir or other person who has wrongfully deprived the widow of dower in the very land which she has succeeded in having set off to her.

Sec. 389, R. S. 1909, being a part of the article defining the widow's rights to dower, reads as follows: "In all cases of judgments for damages, or yearly allowance in favor of any widow under the provisions of this article, execution thereof shall be awarded only against the estate in which dower shall have been assigned." See Griffin v. Regan, 79 Mo. 73; and Reineman v. Larkin, 222 Mo. 156, l. c. 166.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

*Ferriss* and *Kennish, JJ.,* concur.