Nora Brock v. Mary Frances Dorman, John T. Brock, Lawrence Brock, Samuel Brock, Martin Brock, Margaret E. Sullivan, Josephine Brock, Margaret Brock, Thomas Harold Brock, James L. Brock, Appellants.—98 S. W. (2d) 672.

Division One, November 12, 1936.

*Cowgill & Popham, D. F. Bennett* and *John F. Cook* for appellants.

*R. H. Musser* and *Julian L. O'Malley* for respondent.

HYDE, C.—This is an action to try and determine title to real estate in Clinton County. All parties claimed under the will of James Brock, who died in 1915. The case was tried as a jury waived law case, but no findings of fact or declarations of law were asked or made. The court adjudged plaintiff to be the owner in fee simple of the land and defendants have appealed from this judgment.

The will of James Brock devised the land in question to his son Samuel Brock, "to have and to hold, during his natural life and after his death to go to his heirs." He made similar devises of other land

to another son and to his daughter. The testator made certain provisions for his wife, in lieu of dower, but, when she died, he made a codicil leaving property, bequeathed to her, to a granddaughter. (He left this granddaughter more property by a later codicil.) Also, "to equalize values of property," he charged each of the two tracts of land, devised to his sons, with $1000 to be paid to his daughter. Thereafter, when his other son died, by a second codicil, he created a trust in the land devised to the deceased son for the benefit of this son's six minor children. This trust was to terminate, "when the youngest of said children shall become twenty-one years of age," by sale of the land and division of the proceeds among them or in case of the death of any of them without "descendants," then "among the survivors." This will and the codicils were prepared by lawyers. Defendants are the grandchildren and great-grandchildren of the testator.

Plaintiff is the wife of the testator's son, Samuel Brock, who died after the testator's death. Samuel Brock and his wife had no children, born to them. However, about two and one-half years before his death, Samuel Brock and his wife filed a petition for the adoption of Frances Hickey, then forty-three years old, in the Juvenile Division of the Circuit Court of Jackson County and decree of adoption was there entered adjudging her "to and for all legal intents and purposes become and be the child of Samuel Brock and Nora Brock." She was not related to them but had lived with them at intervals during her childhood. Mrs. Brock said she was adopted "because we had raised her and she was just a daughter to us, and we wanted her to have everything we had." Frances Hickey conveyed to Nora Brock, the land devised to Samuel Brock by his father, both by warranty deed at the time of the adoption decree and by quitclaim deed after Samuel Brock died. She said these deeds were made "so that if anything happened to me before Mrs. Brock's death there would be no question about my interest in it."

Defendants contend that at the time the will was made and all during the remainder of the life of James Brock, the law of Missouri was that an adopted child did not inherit the estate of any member of the adopting family, other than the adopting parent, and so did not inherit the estate of the ancestors or collateral kin of the adopting parent. [Melek v. Curators of University of Missouri, 213 Mo. App. 572, 250 S. W. 614; Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585; Clarkson v. Hatton, 143 Mo. 47, 44 S. W. 761; Reinders v. Koppelman, 94 Mo. 338, 7 S. W. 288; Sec. 1673, R. S. 1909.] Therefore, they say that "when the whole will is considered it is obvious that James Brock's intention was to devise his property to his *own children and grandchildren*," because:

First: The testator must be presumed to have prepared his will in the light of the law as it then was, so that, by the devise to Samuel Brock "during his natural life and after his death to go to his heirs," he must have meant that descendants of his own blood should take the property when the life estate terminated, and not adopted grand-children, who could not then inherit from him.

Second: The testator by using the term "descendants" in the second codicil and by providing therein for defendants, who are chil-dren of his deceased son, in the trust thereby created, indicated his intention to have his property go to descendants of his own blood and not to adopted children.

If the testator had provided that, upon the death of the life tenant, the remainder should go to his own heirs, then it might be possible to sustain defendants' contention. But that was not what he said. He provided that it should go to the life tenant's heirs. "The word 'heir" unqualified by any adjective, is a technical word denoting the person on whom the law casts the inheritance on the ancestor's de-cease." [Gardner v. Vanlandingham, 334 Mo. 1054, 69 S. W. (2d) 947.] That question is determined by Statutes on Descents, and "it has been held by this court that an adopted child was a child (of the adopting parents) within the meaning of (our) Statute on Descents," although adopted under the deed of adoption statute. [Bernero v. Goodwin, 267 Mo. 427, 184 S. W. 74; Fosburgh v. Rogers, 114 Mo. 122, 21 S. W. 82.] The adoption by deed statute itself said: "If any person in this state shall desire to adopt any child or chil-dren, as his or her heir, it shall be lawful for such person to do the same by deed." [Sec. 1671, R. S. 1909.]

The question here is not whether Frances Hickey was capable of inheriting from the testator but whether she can take under the designation therein of "heirs" of Samuel Brock. "In the matter of construing the rights of an adopted child to take under a will, it should be borne in mind that it is not a question of the right of an adopted child to inherit, but simply a question of the testator's inten-tion with respect to those who are to share in his estate." [1 Am. Jur. Adoption of Children, sec. 64.] The expression the testator did make is governed by the rule of construction, stated in Section 562, Revised Statutes 1929, and Section 3110, Revised Statutes 1929, which was the law when this will was made and for a long time prior thereto. Quoting the words applicable here these sections read, as fol-lows:

"Sec. 562. If any person, by last will, devise any real estate to any person, for the term of such person's life, and, after his or her death, to his or her children or heirs or right heirs in fee, such devise shall vest an estate for life only in such devisee, and remainder in fee simple in such children.

"Sec. 3110. Where a remainder shall be limited to the heirs, of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heir . . . of such tenant for life shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them."

These statutes abolished the ancient rule of Shelley's case which would have construed this devise as a fee simple estate in Samuel Brock. [Riggins v. McClellan, 28 Mo. 23; Tesson v. Newman, 62 Mo. 198; Bradley v. Goff, 243 Mo. 95, 147 S. W. 1012; Watson v. Hardwick (Mo.), 231 S. W. 965; Green v. Irvin, 309 Mo. 302, 274 S. W. 684.] Under these sections, the vesting of the fee simple estate devised or conveyed is postponed until the termination of the life estate, and made to vest in the persons who are the heirs of such tenant for life at that time and not those who are the heirs of the testator. Since Frances Hickey would have been an heir of Samuel Brock at his death whether she had been adopted by the deed of adoption method (Secs. 1671-73, R. S. 1909), or by the present method by court decree (Secs. 14073-79, R. S. 1929), how could the result be changed by considing that James Brock, in making his will, designated the "heirs" of the life tenant to take the remainder at the termination thereof, in the light of the law or adoption as it then was?

As to the effect of the adoption by deed law, this court said:

"The law of inheritance is a creature of this statute (of descents). . . . . When adopted children were made heirs under the designation of 'children,' no change in the law of descents became necessary, but these 'children' took their place automatically by that name in the descending line and they and their descendants have ever since inherited in that line from the adopting ancestors. . . . The Statute of Adoption places the adopted child next in the line of descent from the ancestor, of whom, for the purpose of inheritance, he becomes the child and heir." [In re Cupples' Estate, 272 Mo. 465, l. c. 473, 199 S. W. 556.]

It must be remembered that courts must decide the meaning of a testator by what he said in his will, and not by attempting "to guess what he meant or what he might have done under certain conditions if not expressed in his will." [St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S. W. (2d) 685; Gardner v. Vanlandingham, supra.] This court, in construing a similar will under the rules prescribed by Sections 562 and 3110, Revised Statutes 1929, in a case where it was claimed that a devise, to a daughter "during her life and after her death to go to her heirs," gave a vested remainder in fee to her children at the testator's death, said:

"Whether the remainder be limited to heirs, or to heirs of the body, in either event, it could not be told who will be such heirs until the death of the life tenant. . . . This statute is as explicit in its

application to 'heirs' as it is to 'heirs of the body.' . . . There is no expression in any way qualifying the word 'heirs' of the life tenant, who 'at her death' are to take the remainder. The mere fact that the life tenant had four children living at the time of the death of the testator does not warrant us in saying that the testator in using without qualification the word 'heirs' used it in the sense of children. There is nothing here upon which to found a holding of interchangeability of words. There is only one word. This is not a case wherein we can say whether the will was drawn by a layman or by a person learned in the law. There is nothing to show that it was drawn by a layman who might loosely use the word 'heirs' as synonymous with the word 'children.' (The will we are considering was drawn by a lawyer.) . . . In the case at bar the heirs of the life tenant were to take the estate at her death, and to take as her heirs—not as heirs of the testator." [Green v. Irvin, 309 Mo. 302, 274 S. W. 684.]

We think this case, and the statutes upon which it was based, clearly shows why defendants' contentions cannot be sustained. Defendants' theory is that the testator meant for the property to go to his own descendants. What they overlook is that he did not provide that this land should go to his own "heirs," when the life estate terminated as in Reinders v. Koppelman, supra, and similar cases reviewed in the Green case. If he had even said "children," or "descendants," or "issue," or "heirs of the body" of the life tenant, we would have had a different expression of intention. [See Melek v. Curators, supra, Sec. 14079, R. S. 1929; In re Estate of Puterbaugh, 104 Atl. 601, 5 A. L. R. 1277, and note.] The word "heirs" is a broader and more inclusive term than defendants' construction of it, and what the testator said was that after the death of the life tenant the land was "to go to his heirs." As said in the Green case, *"the heirs of the life tenant were to take the estate at (his) death, and to take as (his) heirs—not as heirs of the testator."* This being true, defendants' own theory would not help them because Frances Hickey would have been an heir of Samuel Brock at his death whether she had been adopted by the deed of adoption method or by the present method of court decree. As above shown, a child adopted by deed could inherit from the adopting parent and was his heir; and such adopted child was only incapable of inheriting from other relatives of the adopting parents. [See Hockaday v. Lynn, supra.] The new line commenced with the adopting parents, of whom "the adopted child is a statutory descendant." [In re Cupples' Estate, supra.]

Defendants do not contend that the adoption of Frances Hickey was invalid, or that the relationship of parent and child did not exist between her and Samuel Brock so that she could not inherit as his heir. No such contention could be sustained because this court, en

banc, has definitely held that our adoption law "contemplates both the adoption of minors and adults:" [St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S. W. (2d) 685; see, also, State ex rel. Buerk v. Calhoun, 330 Mo. 1172, 52 S. W. (2d) 742, 83 A. L. R. 1393 (note); 2 C. J. S. Adoption of Children, sec. 13; 1 Am. Jur. Adoption of Children, sec. 13.] Moreover, under the Statute for Adoption by deed, this court had also held that an adult could be adopted, saying: "The statute uses the word 'child' in the sense of its relation to the word 'parent' and in the capacity of heir . . . to enable a person to bestow upon the object of his favor the attribute that the law bestows on one's own offspring." [In re Estate of David Moran, 151 Mo. 555, 52 S. W. 377.] Therefore, Frances Hickey was an heir of Samuel Brock as "the lawful child of such parent" (see Moran v. Stewart, 122 Mo. 295, l. c. 299, 26 S. W. 962), and would have had that relation to him even if the statute for adoption by deed (Secs. 1671-73, R. S. 1909) had been left unchanged. The principal effect of the change upon the right of inheritance was to broaden that right to include ancestors and collaterals. [Sec. 14079, R. S. 1929; Shepherd v. Murphy, 332 Mo. 1176, 61 S. W. (2d) 746.] Certainly, the right of inheritance from the adopting parent already existed. We, therefore, hold that Frances Hickey was an "heir" of the life tenant and took the remainder as such.

Defendants further say that this adoption was a subterfuge to defeat the will so as to take the land away from defendants, who would have received it under the will if there had been no adoption. They also say that, since Samuel Brock could not have accomplished this result by will or deed, he should not be allowed to do indirectly something that he had no right to do directly. As above pointed out, this is not a question of a right to inherit from the testator, nor is it a question of any power of disposition by the life tenant. The only question is who comes within the designation of the term "heirs" of the life tenant, at his death?—because under the plain terms of the will whoever then came within that designation was to be the remainderman. Under the statutes, above set out, abolishing the rule of Shelley's case in this State, such remainderman takes the land devised, not by inheritance from anyone but "as purchaser," by reason of being the person, who at the death of the life tenant, answered the description in the will. It is, therefore, wholly immaterial how, or because of what events, actions, or occurrences, such remainderman came to be within that designation. The testator was content that the remainderman should be the person upon whom the laws on descents would cast inheritance from the life tenant, when the life tenant died; and that inheritance would have been cast, by the laws in effect when he wrote the will, upon Frances Hickey if she had been adopted under the Statute of Adoption then in force. Therefore,

we cannot say that the testator intended for some other person to be the remainderman.

The judgment is affirmed. *Ferguson* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.