William L. (Smith) McCORMICK,
Plaintiff-Respondent,

v.

Treola M. JOHNSON, Administratrix of Estate of George F. McCormick, Deceased, Estelle McCormick, and Napoleon B. McCormick, Defendants-Appellants.

No. 33327.

St. Louis Court of Appeals.

Missouri.

May 20, 1969.

Arthur Kreisman, St. Louis, for defendants-appellants.

David E. Horn, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

In this suit for the specific performance of an oral contract to adopt the chancellor entered a judgment decreeing that plaintiff is the adopted son of George McCormick, who died intestate in the City of St. Louis on December 14, 1966. Defendants, who are the Administratrix of the decedent's estate and decedent's sister and brother, appeal from that judgment and decree. Jurisdiction is in this court as the record before us does not show that the title to real estate is involved or that the amount in dispute exceeds $15,000. Const.1945, Art. V, § 3, V.A.M.S.; RSMo 1959, § 477.040, as amended, V.A.M.S.

Preliminarily, it is appropriate to note that since 1917 the only statutory method of adoption of a child has been by decree of the appropriate juvenile court. State ex rel. Buerk v. Calhoun, 330 Mo. 1172, 52 S.W.2d 742, 83 A.L.R. 1393. However, it has been specifically held that the present and prior statutory enactments pertaining to adoption did not oust a court of equity of jurisdiction to decree an adoption in a proper case, where the facts warrant it, although the prevailing statutory method of adoption was not complied with. Menees v. Cowgill, 359 Mo. 697, 223 S.W. 2d 412, cert. den. 338 U.S. 949, 70 S.Ct. 488, 94 L.Ed. 585. And a court of equity will declare specific performance against the adopter's estate to the extent at least of making the adoptee heir when it is established that a contract to adopt was actually made and was based upon good consideration, and where it was fully performed by the person to be adopted but was not performed by the promisor during his lifetime. Long v. Willey, Mo., 391 S. W.2d 301; Niehaus v. Madden, 348 Mo. 770, 155 S.W.2d 141; Lynn v. Hockaday, 162 Mo. 111, 61 S.W. 885. The person seeking the decree of equitable adoption has the burden of proving the adoption contract, Capps v. Adamson, 362 Mo. 539, 242 S.W.2d 556; Westlake v. Westlake, Mo., 201 S.W.2d 964; by evidence so clear, cogent and convincing as to leave no reasonable doubt in the chancellor's mind. Capps v. Adamson, supra; Westlake v. Circuit Court, of robbery in the first decourt, in a 27.26 hearing, has the right and Westlake, supra; Benjamin v. Cronan, 338 Mo. 1177, 93 S.W.2d 975.

It is also appropriate to point out that since this is an equity case it is our duty to consider the evidence de novo and to reach our own conclusions. In doing so, pursuant to Civil Rule 73.01, V.A.M.R., we shall consider only that evidence which is properly before us. Of course, when an issue of fact has been decided by the chancellor upon conflicting evidence, and such finding turns upon the testimony of witnesses who have appeared before him, such finding will be sustained unless clearly erroneous. Long v. Willey, supra; Hegger v. Kausler, Mo., 303 S.W.2d 81.

Plaintiff was born William L. Smith on August 13, 1909, apparently in Aberdeen, Mississippi. His father was named William Smith, but the name of his mother, who died at some unstated time prior to 1922, does not appear in the evidence. There was no serious dispute between the contending parties about the fact that the decedent, George McCormick, and his wife, Carrie Lee McCormick (who died in 1940), took the plaintiff into their home in St. Louis in 1922, when plaintiff was about 13 years of age, and that plaintiff continued to live with them until he reached early manhood and became employed in Buffalo,

New York. There was no direct oral evidence of a parol contract to adopt the plaintiff. But there was introduced into evidence the verified petition of the decedent and his wife to adopt the plaintiff and to change his name to William McCormick, filed in the Juvenile Court of the City of St. Louis on October 20, 1922, and the consents to such adoption formally executed by William Smith, plaintiff's father, and by plaintiff. The file shows that a guardian ad litem was appointed and the cause set for hearing on November 10, 1922. It further shows that the case was continued on the latter date, and again on November 17, 1922, and that on December 28, 1923, it was continued generally. Of course, the petition of the McCormicks to adopt the plaintiff cannot be given the effect of a statutory adoption, since no decree was ever entered. But the authorities are unanimous in holding that the petition has strong evidentiary value of a previous parol agreement to adopt. Ahern v. Matthews, 337 Mo. 362, 85 S.W.2d 377; Kerr v. Smiley, Mo., 239 S.W. 501; Healey v. Simpson, 113 Mo. 340, 20 S.W. 881. Furthermore, there was an abundance of circumstantial evidence which supports the conclusion that the McCormicks had agreed to adopt plaintiff. After he entered their home in 1922 he went by and was known among their friends and neighbors, as well as plaintiff's schoolmates and acquaintances, as William McCormick. Numerous witnesses who knew the McCormicks intimately testified that throughout the years, and until the time of his death, the decedent invariably introduced and referred to plaintiff as his son, and frequently stated that he had adopted plaintiff. For example, for some years Dr. Carrie Dawson, principal of an elementary school at the time she testified, had been engaged to be married to the decedent, after the death of Mrs. McCormick, during the course of which she and the decedent exchanged information about their respective family backgrounds. The decedent told her plaintiff was his son, whom he had adopted, introduced her to plaintiff as

such, and on many occasions, in company with decedent, visited with plaintiff and his wife in their home.

The evidence also clearly establishes that there was a warm and close relationship between the decedent and plaintiff. Family gatherings were held, gifts exchanged on appropriate occasions, and constant contact maintained between them. The decedent frequently expressed his pride and gratification at the talent and attainments of plaintiff, was pleased when the plaintiff married after he returned to St. Louis, and over a period of years followed the custom of having Sunday dinner with plaintiff and his wife. Plaintiff and his wife diligently worked for months in assisting decedent and Dr. Dawson to rehabilitate a house which decedent had purchased in contemplation of decedent's marriage to Dr. Dawson, and on separate occasions when plaintiff and the decedent borrowed money each co-signed the other's note. Plaintiff and his wife adopted a child in 1945, and thereafter the decedent always referred to the child as his grandson, and, as one witness (herself a grandmother) expressed it, they compared the talents of their respective grandchildren, as grandparents are apt to do.

From a careful review of the competent evidence we have reached the same conclusion as did the chancellor, that in 1922 decedent and his wife entered into a parol contract with plaintiff's father to adopt plaintiff; that thereafter the McCormicks and the plaintiff regarded, treated, and held each other out to be parents and child; that plaintiff rendered to them the same love and affection and discharged all of his obligations to them as though he was their child; and that the McCormicks, and in particular the decedent, failed to carry out their contract and agreement to adopt plaintiff.

While not raised as a point in defendants' brief, two other facets of the case, mentioned in their argument, should be disposed of to forestall any complaint

that they have been overlooked. Defendants introduced in evidence the record made at the hospital when the decedent entered it for what it developed was his terminal illness. On the admission sheet the decedent's age on November 21, 1966 was given as 63, and plaintiff, who was present on the occasion, was listed as the decedent's brother, which information, according to the record, had been supplied by decedent. Defendants argue from this that the decedent thus was only 19 years of age, and a minor, when the contract to adopt was made in 1922, and imply that hence it was void. Putting aside any consideration of the question of whether such a contract was void as opposed to being voidable, we find from the evidence that the decedent in fact was not a minor in 1922. In applying for her Letters of Administration the defendant Administratrix gave the decedent's age as 69 at the time of his death, which would have made him 25 years old in 1922; and the same witness testified on cross-examination that in going through the decedent's effects after his death she had found a lapsed insurance policy issued on his life, dated 1910, in which his then age was given as 13, which would likewise show his age as 25 in 1922. Such evidence amply supports our conclusion that the decedent was not a minor at the time the parol contract to adopt was made.

As to the second facet, that of the relationship between the decedent and the plaintiff, it is not only contrary to the allegations made under oath in the decedent's petition for adoption, but it is contrary to the overwhelming weight of the evidence produced by plaintiff's witnesses. As we have eliminated from our consideration of this case the testimony of plaintiff, admitted (rightly or wrongly it is unnecessary for us to decide) over defendants' objection based on Section 491.010, we do not take into account plaintiff's explanation of the hospital record.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

BRADY, Acting P. J., and JAMES H. KEET, Jr., Special Judge, concur.